## RIO GRANDE PRODUCTS CORPORATION v. YARBROUGH et al.   (No. 7980.)

Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1928.

**1. Corporation ⬠⟹557(2)—Injunction ⬠⟹118 (1)—Petition by persons contracting for space in cold storage plant, later conveyed to corporation, held insufficient to authorize receivership for corporation and injunction.**

In action against corporation to whom cold storage plant had been assigned, for the appointment of a receiver and for an injunction, allegations of petition by persons contracting for space to effect that plant had not been completed within required time and was not properly constructed nor equipped, and further general allegations, including that of mismanagement of corporation, *held* insufficient to authorize granting receivership and injunction without notice to defendants and a full hearing on the merits.

**2. Receivers ⬠⟹32—General conclusions of pleader, without statement of supporting facts, are futile for purpose of receivership or injunction.**

Allegations in petition for receivership and injunction comprising merely the most general conclusions of pleader, without statement of any specific facts to support them, are futile for purpose of procuring receivership or injunction.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by Y. P. Yarbrough and others against the Rio Grande Products Corporation and others. Judgment for plaintiffs, and defendant named appeals. Reversed and rendered.

Cameron & Epperson, of Edinburg, for appellant.

Thompson & McWhorter, of Weslaco, and Rabel, Napier & Fristoe, of Harlingen, for appellees.

SMITH, J.   Y. P. Yarbrough and twenty other fruit and vegetable producers in Hidalgo county brought this action against the Rio Grande Products Corporation, a Texas corporation, and its four individual stockholders, for the appointment of a receiver of the corporate affairs and property, and for an injunction restraining its officers and stockholders from holding corporate meetings, taking corporate action, or exercising any control over the corporate affairs or property. Acting alone upon the allegations in the petition, and without a hearing or any notice to the defendants, the trial court granted in full the relief prayed for, and the defendants in the action have appealed. The case will be stated from the showing made in the petition.

In April, 1927, the several appellees individually entered into identical contracts with Wm. R. Burns, one of the appellants, whereby the latter obligated himself to purchase a suitable site and construct thereon a cold storage warehouse in the town of Weslaco, in Hidalgo county, with a capacity of not less than 50 carloads. The preamble of the contracts, and the provisions thereof deemed material to this inquiry, were as follows:

"The State of Texas, County of Hidalgo:

"Whereas, William R. Burns, of Hidalgo county, Tex., contemplates the construction and operation of a cold storage plant in the town of Weslaco, Tex., to be known as and operated under the name of 'Weslaco Cold Storage Company'; and,

"Whereas, the said William R. Burns desires to sell, and ——, who resides in Hidalgo county, Tex., desires to purchase, certain space in said plant:

"Now, therefore, know all men by these presents that we, the said William R. Burns, hereinafter called 'company,' and the said ——, hereinafter called 'owner,' have made and entered into the following contract:

"First. For the consideration hereinafter named, the company has this day, and does by these presents, agree to sell, transfer, and convey unto the said owner certain space in said cold storage plant, having a total capacity of (50) carloads, said property to be conveyed by proper deed of conveyance not later than October 1, 1927, subject to and containing the conditions hereinafter set out.

### "(Construction and Operation.)

"Second. The company agrees to construct said plant in a good and workmanlike manner installing therein good, new, and efficient machinery and equipment of the latest approved type, capable of furnishing adequate refrigeration, actual construction to be commenced in good faith when space in said storage plant has been subscribed for of a total capacity of 30 carloads, and to be fully completed and in operation within 6 months after construction has been commenced.

### "(Terms.)

"Third. In consideration of the premises, the owners agree to pay to the company the sum of —— dollars, 25 per cent. of which shall be paid in cash upon the execution and delivery of this contract, 25 per cent. to be paid when the storage plant is completed and in operation, 25 per cent. to be paid on the 1st day of April, 1928, and the remainder to be paid on the 1st day of April, 1929. The down payment shall be held in trust by [named banks] of Weslaco, Tex., and to be paid to the company when the construction of the plant is commenced and 50 per cent. of the building material is on the ground.

### "(Service Rates.)

"Fourth. It is agreed between parties hereto that the space purchased by the owner shall be used only for cold storage and a minimum charge of $10 per month per carload space shall be made by the company against the owner, and, when refrigeration is demanded by the owner, it shall be supplied at the following rates per carload space, which the owner agrees to pay: For one-half month or less $20, and

for any period of time greater than one-half month the owners shall pay at the rate of $35 per month. In the event the owner desires to use said space for precooling, a charge of $3.50 per car shall be made in addition to the other charges herein provided for, all service charges to be paid on the first day of each month for the services rendered during the preceding month, and in case of default the company shall have the right to discontinue service and shall have a lien upon the property herein agreed to be conveyed to secure the same.

#### "(Sanitation.)

"Fifth. The owner shall take good care of the space owned by him, and shall keep the same in a clean and sanitary condition, and shall observe all state and municipal laws and police and health regulations applicable thereto, and shall not store, or permit to remain therein any onions, garlic, meat, or other matter giving off foul or offensive odor, and in the event of a violation of this provision the company shall have the right, with or without notice to the owner, and without liability, to remove such offensive matter, and the cost thereof shall be charged to the owner.

#### "(Exclusive Use.)

"Sixth. It is understood that the owner is a producer and not a dealer, and in case he should desire to use his space as a dealer the service rates herein provided for shall not apply, but a fair rate will be made by the company upon application.

#### "(Subrental.)

"Seventh. The space purchased by the owner is to be used exclusively by him, provided, however, that in the event the said owner shall not desire to use said space, or a portion thereof, the company will use its best efforts to rent the same in use by the owner at the best rental price obtainable, and which will be profitable to both parties, and one-half of the gross receipts shall be paid to the owner as collected and the remainder to be retained by the company.

#### "(Transfer.)

"Eighth. The owner of this space has the right and privilege of selling the same, subject to the company's right of refusal.

#### "(Superintendent.)

"Ninth. It is understood that the company shall have in its employ a competent warehouse man who shall exercise the duties of a superintendent, and, among other things, it shall be his duty to maintain order and sanitation in said plant, and shall have the right to exercise such control over the use of the plant as may be necessary to obtain the highest possible degree of efficiency.

#### "(Arbitration.)

"Tenth. It is further agreed that there shall be created a standing board of arbiters to whom all disputes between the owner and the company with reference to the use of this space shall be referred, said board to be composed of three persons, one of whom shall be selected by the owner and one by the company and the third to be by them selected immediately, and who shall be a bona fide resident of Hidalgo county, Tex. No court action shall ever be had until the matter in dispute shall have first been passed upon by the board of directors."

It was further alleged that by oral agreement Burns contracted to "employ and keep in his employ a good and efficient refrigeration engineer for the purpose of operating said plant and superintending and taking care of the units sold to the plaintiffs herein and the refrigeration thereof."

It was alleged in the petition that some of the appellees contracted to take one-car units of the warehouse, and others to take two-car units, for which they obligated themselves to pay Burns $2,250 and $3,600, respectively, to be paid for in four equal installments, as provided in the contract.

It was alleged that, although the warehouse was not completed and put in operation within the time stipulated in the contract, it was nevertheless, at the commencement of this action, "practically completed and ready for operation, and at least a part thereof is now in operation," and that all the appellees had paid the first installment of their obligation to Burns, and some of them had paid the second installment, but that none of them had received the deeds to the space to be allotted them in the warehouse.

It was alleged that in July, 1927, Burns procured a charter for the Rio Grande Products Corporation, one of the appellants, and thereupon conveyed to said corporation "all of the land and personal property belonging to him and being connected with said cold storage plant, including the cold storage plant and all of the machinery, supplies, equipment, and also all of said written contracts entered into between the said Wm. R. Burns and these plaintiffs; that the present stockholders of said corporation are E. W. Napier, and the defendants Wm. R. Burns, Elizabeth L. Burns, G. C. Parker, and R. M. Pratt; that said corporation owns no other property except that hereinabove referred to;" and that E. W. Napier (not a party to this suit, but one of counsel for appellees) is president of the corporation, and Wm. R. Burns is the secretary and treasurer.

The foregoing is deemed a fair statement of the relations and respective rights and obligations of the parties, as disclosed in the petition, and it is now in order to state the complaints upon which the receivership and injunction were granted.

[1, 2] It will be observed from the foregoing statement that Burns and his assignee, the corporation, have practically completed the obligation to purchase a site and construct the refrigeration plant thereon, and that the plant is practically ready for operation. No complaint is made of the location or sufficiency of the site, nor are any sufficiently specific objections made to the character or equipment of the plant erected thereon. It is true that appellees allege in general

terms that the construction of the plant was delayed beyond the time stipulated in the contract, and that appellants have failed to construct and equip the plant in the manner and with the character of materials prescribed in the contract, but the delay in construction and operation, complaint of which has been waived by appellees' conduct, would not warrant the placing of the corporation and all its property in the hands of a receiver, to be operated indefinitely by him as prayed for, nor authorize the issuance of an injunction prohibiting the corporation and its stockholders from functioning for any purpose, as was done. Nor was such action warranted by the general allegation that the plant was not constructed or equipped in the manner and with the materials prescribed in the contract. Those allegations comprise merely the most general conclusions of the pleader, without statement of any specific facts to support them, which render them futile for the purpose of procuring receivership or injunction. But if supported by full allegations of specific facts, they would be insufficient to support the drastic remedies granted. Mere laxness in commencing, completing and equipping the plant could not be cured by a receiver, nor by tying the hands of the corporate owner of the plant so that it could not possibly go forward and operate the plant.

It is alleged that appellants have failed and refused to employ and retain an efficient refrigeration engineer to operate the warehouse plant, as they had orally agreed to do. This allegation is put forward as a ground for receivership and injunction, but it is quite obviously insufficient for that purpose. There is no allegation of a past or even present need for such engineer, and it may be properly assumed that none will be needed until the plant is in operation for refrigeration purposes.

As further ground for the relief sought, it is alleged that appellants have failed to execute and deliver deeds to appellees conveying the spaces allotted to them in the warehouse. These allegations are insufficient, for various reasons. It does not affirmatively appear, for instance, that appellants have refused to execute or deliver those instruments, or that appellees have made demand therefor, or that appellants will not execute and deliver at any time requested, or even that appellees have so performed as to entitle them to make such demand. But even so, if appellees' remedy is an extraordinary one, it certainly is not through receivership, the last resort. The most drastic remedy conceivable for this particular wrong is a mandatory injunction, and that would be available only in an extreme situation, not shown to exist here.

To support the relief sought and granted, appellees alleged various acts of mismanagement and internal strife in the appellant corporation. It is alleged, for instance, that Burns, the secretary and treasurer, is usurping the powers of Napier, the president, that he has assumed complete control over the corporate affairs and custody over the corporate property, books, moneys, and accounts, to the exclusion of the president. But it is not conceivable how these facts concern appellees, none of whom owns any stock in the corporation or has any voice in its control or management, nor do those allegations warrant receivership for the corporate property and affairs, at the instance of appellees, or an injunction restraining all the stockholders from meeting or performing any of their functions as such. Even if appellees had any right to interfere in the internal affairs of the corporation, in which they own no stock, the facts stated would not warrant such interference, for it affirmatively appears from the petition that the corporation was not in default in its obligations to appellees; it had secured a proper site and had "practically" completed and placed in readiness for operation the very utility it had contracted to erect. It is true, appellees alleged there had been a slight delay in building the plant, and that in some undisclosed particulars the plant was not constructed and equipped as contracted for, but those allegations are not of a character to support receivership or injunction proceedings. The corporation had substantially complied with its obligations to appellees, was not in default when this suit was brought; and the vague allegations that, because the corporate officials were exceeding the authority respectively conferred upon them, appellees feared the corporation would thereafter default in subsequently arising obligations to appellees did not warrant the drastic remedies sought and obtained in the court below.

So much may also be said of the allegation that appellant Burns had collected $20,000 from space owners in the warehouse, and had "pledged" appellees' subscription contracts for an additional $15,000, making a total of $35,000 he has obtained on the credit of and with the collateral belonging to the corporation; that he has "used all of said money largely to further his own private business and in a manner in no wise connected with the cold storage business." These allegations afford no support whatever to the extraordinary relief granted appellees, not only for the reasons already given, but also because they are vague generalities and obvious surmises, without specific facts alleged in support of them. The subscription contracts obtained from appellees and other space owners by Burns, and assigned to the corporation, became corporate assets, and, if the corporation saw fit to pledge them, it was of no concern to appellees and could not have the effect of impairing appellees' right to enforce those contracts as written. Appellees' rights

therein are firmly fixed and cannot be destroyed or impaired by controversies among the corporate officials, or by their improvident or unlawful acts. In this situation, and just when the plant is ready for operation and the builders are in a position to realize the fruits of their investment and are not in default with appellees, the latter will not be permitted to arbitrarily throw the project into receivership and tie the hands of the corporation by injunction, in the vague fear that the corporation and its officials may default in their future obligations to appellees. These conclusions apply with equal force to the allegations in the sixth, seventh, eighth, ninth, and tenth paragraphs of appellees' petition, which are too voluminous to set out in this already too long opinion.

Appellees wholly fail to show cause for receivership or injunction, and especially for the application of those harsh and harmful remedies without notice to appellants and a full hearing on the merits. Accordingly, the orders granting that relief will be reversed, and judgment will be here rendered vacating the receivership and dissolving the injunction, all at the cost of appellees.

Reversed and rendered.